Linda M. Tirelli, Esq.
Garvey, Tirelli & Cushner Ltd.
*Attorneys for the Debtor*
50 Main Street, Suite 390
White Plains, New York 10606
(914) 946-2200 / (914) 946-1300
LindaTirelli@thegtcfirm.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
## WHITE PLAINS DIVISION

---------------------------------------------------------X

IN RE:                                                                          **CHAPTER 13**

CYNTHIA CARSSOW FRANKLIN ,
                                                                                **CASE NO. 10-20010 (RDD)**

                          Debtor
---------------------------------------------------------X

CYNTHIA CARSSOW FRANKLIN,


                          Plaintiff,

                                                                                **ADV. PRO. NO.___ (RDD)**

             -against-


WELLS FARGO BANK, N.A., FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                          Defendants.
---------------------------------------------------------X

### ADVERSARY COMPLAINT FOR A DECLARATORY JUDGMENT AND ORDER HOLDING LIEN TO BE VOID UNDER 11 U.S.C. § 506(d)

The above-captioned plaintiff CYNTHIA CARSSOW FRANKLIN (the "Appellee" or

"Debtor" or "Plaintiff"), by and through her attorney of record, Linda M. Tirelli, Esq. of Garvey,

Tirelli & Cushner, Ltd., respectfully alleges as follows:

### JURISDICTION

1.       This is an adversary proceeding brought pursuant to 11 U.S.C. §§ 105, 362(k) and

1322(b)(5).

1

2.      Jurisdiction over the subject matter of this adversary proceeding is conferred upon

the Court by 28 U.S.C. § 1344.

3.      This adversary proceeding is a "core" proceeding within the meaning of 28 U.S.C.

§ 157(b)(2)(F)(I).

## PARTIES

4.      Defendant WELLS FARGO BANK, N.A., (the "Appellant" or "Wells Fargo")

claims to be an alleged secured creditor by filing  proof of claim 1-1 (the "Claim 1-1") in the

Debtor's case on or about July 15, 2010 naming itself, "Wells Fargo Bank, N.A." as the claimant

creditor.  Defendant Wells Fargo can be served at the office of  John Stumpf, its President and

CEO at the following address:

> Wells Fargo Bank, NA
> Attn: John G. Stumpf, President and CEO
> 420 Montgomery Street, San Francisco, CA 94163

Service can also be made at the address of Wells Fargo Bank N.A.'s attorney of record in the base
chapter 13 bankruptcy case as follows:

> Nicole E. Schiavo, Esq.
> Hogan Lovells US, LLP
> 875 Third Avenue
> New York, NY 10022

5.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie

Mac") was alleged at various times by the Defendant Wells Fargo that it owned the loan or,

alternatively, that Freddie Mac owned the loan and Wells Fargo was Freddie Mac's servicing

agent.  Defendant Freddie Mac can be served at the office of its CEO at the following address:

> Federal Home Loan Mortgage Corporation (Freddie Mac)
> Attn: Don Layton CEO
> 8200 Jones Branch Drive
> McLean, VA 22102-3110

2

Service can also be made at the office of Freddie Mac's General Counsel, William McDavid, as follows:

> Federal Home Loan Mortgage Corporation (Freddie Mac)
> Attn: William McDavid, General Counsel,
> Executive Vice President and Corporate Secretary
> 8200 Jones Branch Drive
> McLean, Virginia 22102

## **FACTS**

6.       On June 1, 2010, the Debtor Cynthia Carssow Franklin filed a petition with Manhattan Division of the U.S. Federal Bankruptcy Court, Southern District of New York for relief pursuant to Chapter 13 of the Bankruptcy Code.

7.       At the time of her original Filing the Debtor acted *pro se*.

8.       On or about June 18, 2010, the Debtor's case was transferred to the White Plains Division of the U.S. Federal Bankruptcy Court, Southern District of New York and assigned to the Honorable Robert D. Drain, the United States Bankruptcy Judge.

9.       On or about August 3, 2010, Linda M. Tirelli, Esq., filed a Notice of Appearance to represent the Debtor in her chapter 13 bankruptcy.

10.      On or about July 15, 2010, Wells Fargo filed its Claim 1-1 in the Debtor's case naming itself, "Wells Fargo Bank, NA" as the claimant creditor.

11.      The Debtor through her counsel notified counsel to Wells Fargo of the deficiencies in Claim 1-1 as follows:

> i.   the copy of the note attached to Claim 1-1 bore TWO specific indorsements, neither of which indorsed the note to Wells Fargo;

    ii.    the series of "assignments" attached to Claim 1-1 were inconsistent with some assigning the security instrument together with the note, others assigning only the security instrument;

    iii.    the first assignment of deed of trust pre-dates the notarized signature of the Debtor on the note and deed of trust by three days;

    iv.    an "Assignment of Mortgage" attached to Claim 1-1 and signed by John Kennerty ("Mr. Kennerty"), an undisputed employee of Wells Fargo Bank, purportedly assigned a "mortgage" from the assignor, a defunct entity, "Washington Mutual Bank, FA" to assignee, Wells Fargo Bank, N.A.

12.    Wells Fargo never responded to the Debtor's inquiry about the discrepancies and instead filed an amended proof of claim on September 23, 2010 ("Claim 1-2").

13.    Claim 1-2 was identical to Claim 1-1 in that in included all of the same flawed documents, except that the version of the note attached to Claim 1-2 included an additional indorsement in blank on its face.

14.    It is undisputed this new blank indorsement on the note is a rubber stamp the type of a rubber stamp that anyone off the street could order and purchase at any office supply store.

15.    The Debtor objected to Claim 1-2, in large part, because:

    i.    the authenticity of the added indorsement to the note which was attached to the amended claim 1-2, was questionable given that the additional stamped indorsement that was inconsistent with the prior version of the Note attached to the original proof of claim;

    ii.    a letter from Wells Fargo addressed to Debtor's counsel indicated the loan was owned not by Wells Fargo but allegedly owned by Freddie Mac; and

4

iii.   there was nothing in the proofs of claim to indicate any involvement by Freddie Mac.

16.   Discovery commenced and became hotly contested by Wells Fargo at every stage.

17.   During the discovery process, Debtor sought to determine the true owner of the loan.

18.   At various times, Wells Fargo alleged that it owned the loan or, alternatively, that Freddie Mac owned the loan and Wells Fargo was Freddie Mac's servicing agent.

19.   However, Wells Fargo could not produce a servicing contract with Freddie Mac to establish its agency status as servicer for Freddie Mac.

20.   Wells Fargo also could not produce anything to substantiate a valid claim for its alleged principal, Freddie Mac.

21.   At the August 17, 2011 hearing, the court directed Wells Fargo to produce the servicing agreement by August 24, 2011.

22.   The directed deadline came and went with no contract or written agreement produced.

23.   Wells Fargo then claimed that it could not locate a contract despite its insistence that it was an agent of Freddie Mac.

24.   Debtor then filed a Motion for Partial Summary Judgment as to the issues of in what capacity Wells Fargo brought the claim (*i.e.,* as a servicing agent to a third party or as the actual owner and holder of the Debtor's note) and whether or not the indorsement on the version of the note attached to Claim 1-2 was valid.

25.   At summary judgment, the Bankruptcy Court identified mounting credibility issues with Wells Fargo's documents, including the filing of a document signed by Mr. Kennerty, the

5

Vice President of Loan Documentation at Wells Fargo, purporting to be the agent of the defunct entity "Washington Mutual Bank, FA."

26.     The Bankruptcy Court held that the fact that a rubber stamp indorsement conveniently appeared on a version of the Note attached to the amended claim, without any valid evidence in support thereof, and all the other problems with the Wells Fargo's procedures and documents, was enough to overcome the presumption of authenticity of the indorsement.

27.     The Bankruptcy Court determined that the validity of the indorsement was, therefore, a triable issue of fact.

28.     The Bankruptcy Court held at summary judgment that there was simply nothing in the record to indicate Freddie Mac had ever had any involvement with the Debtor's mortgage loan and therefore, while Wells Fargo may have standing to bring a claim as the owner and holder of the note, subject to proving the authenticity of the rubber stamped indorsement, Wells Fargo did not have standing to bring the claim as a servicing agent for Freddie Mac.

29.     Further, the Bankruptcy Court determined that Wells Fargo's corporate witness, Mary Ellen Brust ("Ms. Brust"), lacked credibility and offered no information as to how or if Freddie Mac ever possessed the Debtor's Note. Nor did Brust have personal knowledge regarding the condition of the indorsement on the note as her testimony was that she never saw the original note.

30.     An artfully worded affidavit of Jose Pinto, another Wells Fargo employee, was deemed inadmissible.

31.     After summary judgment, Wells Fargo was left with the daunting task of proving it was in possession of the original note with a proper indorsement.

6

32.     The Debtor pursued the deposition of Mr. Kennerty who by this time had been terminated from his job at Wells Fargo.

33.     After surviving a motion for protective order in South Carolina, Mr. Kennerty's home state, the Debtor conducted the deposition of Mr. Kennerty which proved damning to Wells Fargo as he stood behind the truthfulness of his 2010 testimony where he described signing between 50 and 150 documents per day and having staff at Wells Fargo charged with the duty of indorsing notes at the request of foreclosure or bankruptcy counsel.

34.     Because the corporate witness, Ms. Brust, relied upon by Wells Fargo at summary judgment was deemed to lack credibility, Wells Fargo produced another professional corporate witness, Kyle Campbell ("Mr. Campbell"), for trial.

35.     At deposition and trial, Mr. Campbell demonstrated a lack of actual knowledge as to when or how the indorsement on the note attached to claim 1-2 came to be.

36.     Mr. Campbell simply could not explain the rubber stamped indorsement in blank other than to say it was found in the records he reviewed at the request of counsel.

37.     Mr. Campbell could not testify as to whether the records could be manipulated or how the records were maintained, or who had access to enter documents into the system.

38.     The Bankruptcy Court found that the totality of the evidence indicated that the indorsement in blank appearing on the version of the Note filed with the amended claim could have been forged and the burden of proving the authenticity of the indorsement had shifted to Wells Fargo and that Wells Fargo simply could not prove the authenticity of the indorsement. The Court specifically pointed to the false assignments of mortgage produced at Wells Fargo and signed by Kennerty to substantiate the fact that Wells Fargo has a known propensity to falsify

documents and fabricate documents for purposes of bolstering claims in foreclosure and bankruptcy courts.

39.    This court expunged and disallowed the claims of Wells Fargo in a 30 page opinion which includes variations of the word "forgery" 28 times.

40.    Wells Fargo filed an appeal with the US District Court.

41.    The undersigned continued on as counsel and defended the appeal.

42.    The appeal has been fully submitted since July 2015.

43.    Decision on the appeal entered on September 30, 2016 affirming this court's final decision to disallow and expunge the Wells Fargo proof of claim based on the evidence issue in that the Debtor through her counsel had overcome the presumption of authenticity of the indorsement on the note shifting the burden to Wells Fargo to prove the authenticity of the indorsement.  The US District Court agreed that Wells Fargo did not meet its burden; the indorsement very well could have been forged give the fact that John Kennerty testified to the tasks of the Note Indorsement Team and the Loan Documentation department which generated assignments on an as-needed basis for entities, like Washington Mutual Bank FA, which no longer existed.

44.    Plaintiffs are now brining this adversary complaint for a declaratory judgment for a void lien under 11 U.S.C. 506(d).

## AS AND FOR THE FIRST CAUSE OF ACTION
### Declaratory Judgment for a Void Lien under 11 U.S.C. 506(d)

45.    The Plaintiff repeats, reiterates and re-alleges paragraphs 1 through 44 with same force and effect as if fully set forth at length herein.

46.    Section 506(d) of the United States Bankruptcy Code (the "Code") provides, in

relevant part:

> (a) To the extent that a lien secures a claim against the debtor that
> is not an allowed secured claim, such lien is void, unless —
>
>> (1) such claim was disallowed only under section 502
>> (b)(5)[1] or 502 (e)[2] of this title; or
>>
>> (2) such claim is not an allowed secured claim due only
>> to the failure of any entity to file a proof of such claim
>> under section 501 of this title."

11  U.S.C. § 506(d)(1)-(2).

47.    None of the exceptions to 11 U.S.C. 506(d) applies to the Court's disallowance of

Defendant's Claims 1-1 and 1-2.

48.    The Bankruptcy Court found that Debtor rebutted the presumption of authenticity

that attaches to signatures on commercial paper and that the Debtor presented sufficient evidence

that Wells Fargo had manufactures documents such as the John Kennerty Assignment of Mortgage

signed on behalf of an entity, Washington Mutual Bank, FA, which no longer existed on the date

of the assignment and that Wells Fargo could have forged the indorsement in blank on the note

and therefore Wells Fargo lacked standing to file the claim as owner or holder of the note.

49.    The Bankruptcy Court also found that Wells Fargo lacked standing to file any claim

as a servicing agent for Freddie Mac.

---

[1] Such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523 (a)(5)of this title;

[2] Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—**(A)** such creditor's claim against the estate is disallowed; **(B)** such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or **(C)** such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

50.     The Bankruptcy Court expunged Wells Fargo's Proofs of Claim 1-1 and 1-2.

51.     Since the Proofs of Claim by Defendant Wells Fargo were disallowed and expunged and did not fall under any of the above exceptions, the alleged lien of Defendants' on Plaintiff's Premises should be declared void under 11 U.S.C. 506(d).

**WHEREFORE**, Plaintiff prays that the Court grant the relief requested herein and issue a Declaratory Judgment and Order holding that since the Proofs of Claim by Defendant Wells Fargo were disallowed, the alleged lien of Defendants' on Plaintiff's Premises should be declared void under 11 U.S.C. 506(d); and

**WHEREFORE**, any amended claim brought by Wells Fargo as servicing agent to Freddie Mac or by Freddie Mac individually remains subject to the fully litigated objection to claim and as the claim is disallowed and expunged the alleged lien of Defendants' on Plaintiff's Premises should be declared void under 11 U.S.C. 506(d); and for such other and further relief as to the Court may seem just and proper.

Dated: October 5, 2016
        White Plains, New York

                                        RESPECTFULLY SUBMITTED,

                                        /S/ LINDA M. TIRELLI
                                        Linda M. Tirelli, Esq.
                                        Garvey Tirelli & Cushner, Ltd.
                                        *Attorney for Debtor/Plaintiff*
                                        50 Main Street, Suite 390
                                        White Plains NY 10606
                                        Phone: (914) 946-2200
                                        Fax: (914) 946-1300