**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS DIVISION**

--------------------------------------------------------X

IN RE:

CYNTHIA CARSSOW FRANKLIN          ,

                                    **CHAPTER 13**

                                    **CASE NO. 10-20010 (RDD)**


            Debtor
--------------------------------------------------------X

CYNTHIA CARSSOW FRANKLIN,



            Plaintiff,

                                    **ADV. PRO. NO.16-08246 (RDD)**

        -against-


WELLS FARGO BANK, N.A., AND FEDERAL
HOME LOAN MORTGAGE CORPORATION,


            Defendants.
--------------------------------------------------------X

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Cynthia Carssow Franklin files this First Amended Complaint seeking a

declaratory judgment that the lien securing the property that is the subject of Defendant Wells

Fargo's claim no. 1 filed in the above-captioned Chapter 13 case is void by operation of 11 U.S.C.

§ 506(d), and Plaintiff also seeks in this amended complaint to recover her actual damages, punitive

damages, attorneys' fees and costs, and appropriate punitive sanctions against Defendant Wells

Fargo for its outrageous, fraudulent, and vexatious conduct in connection with Plaintiff's Chapter

13 bankruptcy case:

## INTRODUCTION

1.      This lawsuit represents the culmination of nearly six years of litigation between the Plaintiff, Cynthia Franklin, and the alleged servicer of her mortgage loan, Wells Fargo.  This Court is already thoroughly versed in the basic facts underlying Ms. Franklin's disputed mortgage loan, having presided over and decided the objection to Wells Fargo's proof of claim, including an extraordinary number of related motions and other filings in connection with Plaintiff's Chapter 13 bankruptcy case.  As a consequence of the Court's disallowance of Wells Fargo's proof of claim, this lawsuit aims to declare the lien against Ms. Franklin's Texas home to be void pursuant to 11 U.S.C. § 506(d).

2.      However, resolution of the claim objection is not all this lawsuit seeks to accomplish.  Ms. Franklin also seeks recovery of her substantial actual damages incurred as a result of Wells Fargo's and its counsel's egregious abuses of the bankruptcy process in connection with the litigation of Wells Fargo's proof of claim in this case, as well as an award of appropriate and significant punitive damages and/or punitive sanctions against Wells Fargo in order to deter Defendants and their industry peers from engaging in the practices that have needlessly multiplied and complicated this matter.

3.      As detailed herein, and as experienced first-hand by the Court, Wells Fargo has dissembled, hidden, and openly misrepresented critical facts regarding Wells Fargo's status relative to Ms. Franklin's mortgage loan, as well as the nature, authenticity, and content of Wells Fargo's records with respect to Ms. Franklin's mortgage loan.  Wells Fargo has continually urged inconsistent and irreconcilable legal positions, repeatedly altering its legal strategy, as well as its factual claims, whenever its tactics have been thwarted by adverse court rulings.

2

4.      The bankruptcy process cannot function as Congress intended if conduct and tactics like those employed by Wells Fargo in this case go unchecked.  Thus, by this suit, Ms. Franklin seeks to provide a means for this Court to send a clear message to Wells Fargo and their industry peers that there <u>will</u> be meaningful consequences for those who dare to engage in this type of flagrant abuse of the bankruptcy system.

## **JURISDICTION**

5.      This is an adversary proceeding brought pursuant to 11 U.S.C. §§ 105 and 506(d), 15 U.S.C. § 1692 et seq, 15 U.S.C. § 1681 et seq, and other common law causes of action.

6.      Jurisdiction over the subject matter of this adversary proceeding is conferred upon the Court by 28 U.S.C. § 1344.

7.      This adversary proceeding is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F)(I).

## **PARTIES**

8.      Defendant WELLS FARGO BANK, N.A., (the "<u>Appellant</u>" or "<u>Wells Fargo</u>") claims to be an alleged secured creditor by filing proof of claim 1-1 (the "<u>Claim 1-1</u>") in the Debtor's case on or about July 15, 2010 naming itself, "Wells Fargo Bank, N.A." as the claimant creditor.  Defendant Wells Fargo can be served at the office of Timothy Sloan, its President and CEO at the following address:

> Wells Fargo Bank, NA
> Attn: Timothy Sloan, President and CEO
> 420 Montgomery Street, San Francisco, CA 94163

Service can also be made at the address of Wells Fargo Bank N.A.'s attorney of record in the base Chapter 13 bankruptcy case as follows:

3

Nicole E. Schiavo, Esq.
Hogan Lovells US, LLP
875 Third Avenue
New York, NY 10022

9.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie

Mac") was alleged at various times by the Defendant Wells Fargo that it owned the loan or,

alternatively, that Freddie Mac owned the loan and Wells Fargo was Freddie Mac's servicing

agent.  Defendant Freddie Mac can be served at the office of its CEO at the following address:

Federal Home Loan Mortgage Corporation (Freddie Mac)
Attn: Don Layton CEO
8200 Jones Branch Drive
McLean, VA 22102-3110

Service can also be made at the office of Freddie Mac's General Counsel, William McDavid, as

follows:

Federal Home Loan Mortgage Corporation (Freddie Mac)
Attn: William McDavid, General Counsel,
Executive Vice President and Corporate Secretary
8200 Jones Branch Drive
McLean, Virginia 22102

**FACTS**

10.     Plaintiff incorporates by this reference the Court's docket for her Chapter 13 Case

No. 10-20010-rdd, including all documents filed in connection with Plaintiff's bankruptcy case

accessible via PACER appearing on the Court's docket.

11.     Plaintiff further incorporates by reference the Court's Claims Register for her

Chapter 13 Case, including all claims and other documents filed in connection with Plaintiff's

bankruptcy case accessible via PACER appearing on the Court's claims register.

4

12.     On June 1, 2010, Plaintiff Cynthia Carssow Franklin filed a *pro se* petition for bankruptcy relief pursuant to Chapter 13 of the Bankruptcy Code with the Manhattan Division of the United States Federal Bankruptcy Court, Southern District of New York.

13.     On or about June 18, 2010, the Debtor's case was transferred to the White Plains Division of the U.S. Federal Bankruptcy Court, Southern District of New York and assigned to the Honorable Robert D. Drain, the United States Bankruptcy Judge.

14.     On or about August 3, 2010, Linda M. Tirelli, Esq., filed a Notice of Appearance to represent Plaintiff in her Chapter 13 bankruptcy.

15.     On or about July 15, 2010, Wells Fargo timely filed its Claim 1-1 in the Plaintiff's Chapter 13 bankruptcy case, identifying itself, "Wells Fargo Bank, NA" as the creditor.

16.     Plaintiff, through counsel, notified counsel for Wells Fargo of various defects in Claim 1-1, including:

      i.     the copy of the note attached to Claim 1-1 was specifically indorsed to an entity (ABN AMRO) other than the alleged creditor identified on the claim, Wells Fargo;

      ii.     the "assignments" attached to Claim 1-1 were inconsistent: Some purport to assign the security instrument (deed of trust) together with the note, others purport to assign only the security instrument (deed of trust);

      iii.     the first purported assignment of the deed of trust pre-dates the notarized signature of the Debtor on the note and deed of trust by three days;

    iv.    the third assignment attached to Claim 1-1 is signed by John Kennerty (the "Kennerty Assignment"), who was an employee of Wells Fargo Bank on the date that the Kennerty Assignment was executed.

    v.    the Kennerty Assignment purports to assign Plaintiff's "mortgage" from "Washington Mutual Bank, FA" to assignee, Wells Fargo Bank, N.A., yet on the date that the Kennerty Assignment was allegedly executed, Washington Mutual Bank, FA was no longer in existence.

17.    After receiving Plaintiff's correspondence identifying the defects in its proof of claim, Wells Fargo filed an amended proof of claim on September 23, 2010 ("Claim 1-2").

18.    Wells Fargo's Claim 1-2 was identical to Claim 1-1, except that the version of the note attached to Claim 1-2 includes an additional indorsement "in blank" purportedly executed by ABN AMRO, adjacent to the specific indorsements that appeared on the prior version of the note Wells Fargo attached to Claim 1-1.

19.    It is undisputed the ABN AMRO blank indorsement is a rubber stamp.

20.    Anyone off the street could order and purchase a rubber stamp at any office supply store that would produce an imprint that would be identical to the ABN AMRO blank indorsement stamp that appears on the version of the note that was attached to Wells Fargo's Claim 1-2.

21.    Among other reasons, Plaintiff objected to Wells Fargo's amended Claim 1-2 because:

    i.    Plaintiff questioned the authenticity of the new ABN AMRO blank indorsement on the new version of the mortgage Note attached to amended Claim 1-2;

    ii.    Plaintiff's bankruptcy counsel had received correspondence directly from Wells Fargo stating that the Plaintiff's mortgage loan was owned by Freddie Mac, *not* Wells Fargo, the alleged creditor identified on Claim 1-2; and

    iii.    Nothing in either Claim 1-1 or Claim 1-2 indicated that Freddie Mac had any interest in Plaintiff's mortgage loan.

22.    As the Court's docket for Plaintiff's Chapter 13 case amply reflects, Plaintiff has diligently attempted to obtain discovery on the issues raised by the apparent inconsistencies in Wells Fargo's claims, which Wells Fargo aggressively and consistently resisted at every stage.

23.    In particular, during discovery Plaintiff sought to identify the owner of and party entitled to enforce her mortgage loan.

24.    At various times over the course of this litigation, Wells Fargo has alleged that it owns Plaintiff's loan, that it is a creditor of Plaintiff because it is the "holder" of Plaintiff's mortgage note, and most recently, that Wells Fargo is the authorized agent for the holder of Plaintiff's mortgage note, Freddie Mac, in order to justify its filing of Claims 1-1 and 1-2 in Plaintiff's bankruptcy case.

25.    Despite Plaintiff's repeated requests and the Court's specific order, Wells Fargo has not produced any contract or other writing establishing Wells Fargo's alleged agency relationship with Freddie Mac that would authorize Wells Fargo to act as servicer for Plaintiff's mortgage loan on behalf of Freddie Mac.

26.    None of the purported assignments attached to Wells Fargo's Claims 1-1 and 1-2 filed in Plaintiff's bankruptcy case indicate that Freddie Mac holds any interest in Plaintiff's mortgage loan.

27.     Upon information and belief, throughout this litigation, Wells Fargo's actions, statements, and conduct have been within the scope of the authority granted to Wells Fargo by Freddie Mac.

28.     Wells Fargo has failed to produce any competent evidence that its alleged principal, Freddie Mac, has any legally enforceable interest in Plaintiff's mortgage loan.

29.     Freddie Mac is not the holder of Plaintiff's mortgage Note that is the subject of this litigation.

30.     Freddie Mac is not a non-holder of Plaintiff's mortgage Note with the right to enforce Plaintiff's mortgage Note on behalf of the holder of Plaintiff's mortgage Note.

31.     Plaintiff's mortgage Note and Deed of Trust have not been assigned to Freddie Mac.

32.     This Court has already held, after extensive discovery and substantial, actively contested litigation, that Plaintiff has rebutted the presumption of authenticity that attaches to the blank indorsement that appeared on the version of the Note attached to Claim No. 1-2, and this Court's holding to that effect has been confirmed and upheld on appeal by the United States District Court for the Southern District of New York.

33.     Based on Plaintiff's rebuttal of the presumption of authenticity regarding the blank indorsement on the version of the Note attached to Claim No. 1-2, Wells Fargo had the burden of coming forward with evidence that would establish the authenticity of the blank indorsement.

34.     This Court held, and its holding has been confirmed on appeal to the District Court, that Wells Fargo failed to offer any competent evidence of the authenticity of the blank indorsement on the version of the Note attached to Claim No. 1-2.

8

35.     Because the authenticity of the indorsement in blank has been rebutted and because Wells Fargo has failed to prove up the authenticity of the indorsement in blank, this Court properly disallowed Wells Fargo's proof of claim on the grounds that Wells Fargo is not entitled to enforce the Plaintiff's mortgage note because it is neither a holder of the note, nor is it a non-holder in possession of the note entitled to enforce the note on behalf of the holder.

36.     Wells Fargo does not contend that it is authorized to service Plaintiff's mortgage loan on behalf of ABN AMRO, to whom the Note is specifically indorsed.

37.     Freddie Mac is not authorized to enforce Plaintiff's mortgage note on behalf of ABN AMRO.

38.     Despite the fact that this litigation has been ongoing for nearly six years, neither Wells Fargo nor Freddie Mac has ever contended that they are servicing Plaintiff's mortgage loan on behalf of ABN AMRO or that they are otherwise authorized by ABN AMRO to perform any act with respect to Plaintiff's mortgage loan.

39.     Upon information and belief, ABN AMRO assigned Plaintiff's mortgage loan to Washington Mutual Bank, N.A. in 2002, and therefore ABN AMRO claims no present interest in Plaintiff's mortgage loan.

40.     As this litigation has progressed, the Bankruptcy Court has identified numerous credibility issues with the representations made by Wells Fargo and its counsel in connection with this case.

41.     The Bankruptcy Court determined that Wells Fargo's corporate witness, Mary Ellen Brust ("Ms. Brust"), lacked credibility and offered no information as to how or if Freddie Mac ever possessed the Debtor's Note.  Nor did Ms. Brust have personal knowledge regarding the

blank indorsement that appeared on the version of Plaintiff's mortgage note attached to Claim No. 1-2, as her testimony was that she never saw the original note.

42.    The Court also declined to give weight to what it described as an "incomplete and artful" affidavit of Wells Fargo's representative, Jose Pinto, which sought to prove up the authenticity of the indorsed-in-blank version of the Note attached to Claim No. 1-2 by making vague, conclusory, and hearsay statements about the timing, condition, and circumstances of Wells Fargo's receipt of critical documents in this case, including especially the indorsed-in-blank version of Plaintiff's mortgage Note.

43.    Plaintiff sought to take the deposition of Wells Fargo's then-employee, Mr. Kennerty, beginning on November 18, 2010. Wells Fargo actively resisted Plaintiff's efforts to depose Mr. Kennerty for months.

44.    After it became clear to Wells Fargo that Plaintiff was going to insist on taking Mr. Kennerty's deposition, Wells Fargo fired him. Plaintiff is informed and believes and therefore alleges that Wells Fargo terminated Mr. Kennerty's employment specifically so that it could not be compelled to make him available to testify in this or any other litigation regarding his knowledge and responsibilities regarding Wells Fargo's practices, procedures, and policies for addressing loan documentation defects related to the mortgage loans Wells Fargo was servicing.

45.    Despite having terminated Mr. Kennerty's employment, Wells Fargo retained and paid counsel to represent Mr. Kennerty in connection with efforts to obtain a protective order in South Carolina, which sought to preclude Plaintiff from deposing Mr. Kennerty on various grounds, including based on a patently false claim that Mr. Kennerty had received death threats in connection with his work at Wells Fargo.

46.     After Mr. Kennerty's motion for protective order was denied by the United States District Court in South Carolina, Plaintiff finally deposed Mr. Kennerty.

47.     Mr. Kennerty's deposition testimony proved damning to Wells Fargo in this case. The Court held that Mr. Kennerty's testimony, along with the unexplained circumstances in which the blank indorsement appeared on the Note attached to Claim No. 1-2, constituted sufficient evidence to rebut the presumption of authenticity that normally attaches to signatures on negotiable instruments.

48.     In particular, when Plaintiff's counsel finally deposed Mr. Kennerty in this case, Mr. Kennerty confirmed his previous testimony from a 2010 deposition, in which he described signing between 50 and 150 documents per day and having staff at Wells Fargo charged with the duty of indorsing notes at the request of foreclosure or bankruptcy counsel.

49.     Plaintiff is informed and believes and therefore alleges that Wells Fargo created the Kennerty Assignment without any authority whatsoever from Washington Mutual or MERS.

50.     Plaintiff is informed and believes and therefore alleges that Wells Fargo added the indorsement-in-blank purportedly executed by an authorized representative of ABN AMRO without any authority whatsoever from ABN AMRO.

51.     Plaintiff is further informed and believes and therefore alleges that both the Kennerty Assignment and the ABN AMRO indorsement that Wells Fargo added to Plaintiff's mortgage note were acts performed by Wells Fargo in the ordinary course of its business by employees and/or authorized representatives of Wells Fargo, including individuals whose job responsibilities specifically included the fabrication of unauthorized assignments and the

application of fraudulent indorsements to mortgage notes, like Plaintiff's mortgage note, that Wells Fargo was servicing.

52.    Plaintiff is informed and believes and therefore alleges that at the time that Wells Fargo created the Kennerty Assignment and added the ABN AMRO indorsement-in-blank to Plaintiff's mortgage note, Wells Fargo maintained written policies, procedures and/or manuals for its employees and/or authorized representatives charged with the responsibility of preparing and executing mortgage assignments and indorsing mortgage notes.

53.    Plaintiff is informed and believes and therefore alleges that at the time that Wells Fargo created the Kennerty Assignment and added the ABN AMRO indorsement-in-blank to Plaintiff's mortgage note, Wells Fargo had one or more specific "teams" of employees responsible for preparing and executing documents and indorsing mortgage notes in connection with its mortgage servicing business.

54.    Because the Court found that Wells Fargo's first corporate witness, Ms. Brust, relied upon by Wells Fargo at the first summary judgment hearing in this case, lacked credibility, Wells Fargo produced another professional corporate witness, Kyle Campbell ("Mr. Campbell"), for the second summary judgment hearing in this case.

55.    At deposition and trial, Mr. Campbell demonstrated a lack of actual knowledge as to when or how the indorsement on the note attached to claim 1-2 came to be.

56.    Mr. Campbell simply could not explain the rubber stamped indorsement in blank other than to say it was found in the records he reviewed at the request of counsel.

57.    Mr. Campbell could not testify as to whether the records could be manipulated, how the records were maintained, or who had access to enter documents into the system.

58.     This court expunged and disallowed the claims of Wells Fargo in a 30-page opinion which includes variations of the word "forgery" more than 20 times.

59.     Wells Fargo filed an appeal with the U.S. District Court.

60.     The district court's decision on the appeal entered on September 30, 2016 affirmed this court's decision to disallow and expunge the Wells Fargo proof of claim based on the evidence issue in that the Debtor through her counsel had overcome the presumption of authenticity of the indorsement on the note shifting the burden to Wells Fargo to prove the authenticity of the indorsement.  The US District Court agreed that Wells Fargo did not meet its burden; the indorsement very well could have been forged given the fact that John Kennerty testified to the tasks of the Note Indorsement Team and the Loan Documentation department which generated assignments on an as-needed basis for entities, like Washington Mutual Bank FA, which no longer existed.

61.     As of September 15, 2016, Plaintiff had incurred $145,574.03 in reasonable attorneys' fees and expenses in connection with her ongoing disputes with Wells Fargo, which fees and expenses were approved by Order of this Court, entered on December 19, 2016, on Plaintiff's application for compensation and reimbursement of expenses in this case.

62.     Plaintiff continues to incur attorneys' fees and expenses in connection with her ongoing disputes with Defendant Wells Fargo.

63.     Although the ultimate facts of this case have proven straightforward and uncomplicated, Wells Fargo and its counsel's abusive, litigious, dilatory, deceptive, and misleading approach to this litigation have dramatically and needlessly compounded the time and expense required for the Plaintiff and the Court to determine and apply the facts to the applicable law.

13

64.    Even today, Wells Fargo and its counsel continue to engage in abusive, litigious, dilatory, deceptive, and misleading litigation tactics, including most recently by filing a frivolous and actively misleading motion to amend Claim 1-2.

65.    Further, Plaintiff has been damaged by Wells Fargo's abusive and misleading litigation tactics.  Plaintiff's relationships with her son, her boyfriend, and her colleagues have been damaged because Plaintiff cannot speak to anyone about her bankruptcy case or the claims litigation that forms the basis of this adversary proceeding.  Plaintiff also experiences more frequent and more severe migraines as a direct result of Wells Fargo's conduct in her bankruptcy case, and Plaintiff must take over-the-counter migraine medicine on a daily basis.  Plaintiff has also experienced several severe bouts of vertigo, trouble sleeping (for which she must take prescription medication), fatigue, anxiety, depression, loss of concentration, and loss of self-esteem.  Plaintiff has also incurred economic damages in that she has taken fewer clients than she normally would due to the stress of this case.  Most importantly to Plaintiff, her ability to write has been negatively impacted by this case in that time, energy, and concentration required for her to write has been devoted to dealing with the litigation against Wells Fargo.

66.    Additionally, following the disallowance of its claim, Wells Fargo has on four separate occasions requested and received copies of all or portions of Plaintiff's consumer credit reports maintained by Equifax.  An excerpt of Plaintiff's credit report showing these pulls is attached hereto as Exhibit A.

67.    Upon information and belief, Wells Fargo's purpose for obtaining all or portions of Plaintiff's consumer credit reports was for "account review" or "other business transaction."

68.     However, at the time Wells Fargo requested and accessed Plaintiff's consumer credit reports, Plaintiff had no account or business transaction with Wells Fargo due to the disallowance of Wells Fargo's Claim 1-2, and there were no other business transactions between the parties.

69.     Accordingly, Plaintiff now seeks a declaratory judgment voiding the lien securing repayment of Wells Fargo's disallowed claim, pursuant to 11 U.S.C. § 506(d), as well as reimbursement of Plaintiff's attorneys' fees and costs incurred in connection with her dispute with Wells Fargo prior to and through the conclusion of this litigation as both actual damages and as a sanction against Wells Fargo and its counsel, statutory damages, actual damages, and attorneys' fees for Defendants' violations of the Fair Debt Collection Practices Act, actual and exemplary damages for Wells Fargo's fraud on Plaintiff and the Court, actual and exemplary damages for Wells Fargo and its counsel's negligence and gross negligence with respect to the handling of Wells Fargo's claim in Plaintiff's bankruptcy case, actual/statutory damages, punitive damages, and attorneys' fees and costs for Wells Fargo's violations of the Fair Credit Reporting Act, injunctive relief prohibiting Wells Fargo from engaging in the fraudulent practices identified herein, as well as substantial punitive sanctions against Wells Fargo and its counsel for their outrageous and egregious abuse of the bankruptcy process and contempt for the integrity and inherent authority of this Court.

## FIRST CAUSE OF ACTION
**Declaratory Judgment that the Lien securing repayment of disallowed Claim No. 1 is void, by operation of 11 U.S.C. § 506(d) and Injunctive Relief Directing Defendants to File a <u>Release of Lien with the County Deed Records in Williamson County, Texas</u>**

70.     By this reference, Plaintiff incorporates all of the allegations contained in this complaint.

71.     Section 506(d) of the United States Bankruptcy Code (the "Code") provides, in

relevant part:

> (d)  To the extent that a lien secures a claim against the debtor that
> is not an allowed secured claim, such lien is void, unless —
>
> (1)  such claim was disallowed only under section 502
> (b)(5)[1] or 502 (e)[2] of this title; or
>
> (2)  such claim is not an allowed secured claim due only to
> the failure of any entity to file a proof of such claim
> under section 501 of this title."

11 U.S.C. § 506(d)(1)-(2).

72.     None of the exceptions to 11 U.S.C. 506(d) applies to the Court's disallowance of

Defendants' Claims 1-1 and 1-2.

73.     Wells Fargo's claim in Plaintiff's underlying bankruptcy case was disallowed after

protracted and hotly contested litigation, and the lien should thus be avoided under 11 U.S.C. §

506(d). *In re Kohout*, ___ B.R. ___, 2016 WL 6783298 (Bankr. N.D.N.Y. Nov. 10, 2016)(rejecting a

literal interpretation of 11 U.S.C. § 506(d) that would result in disallowance of a claim on a default

basis as not enough to trigger avoidance, but holding that disallowance of a contested secured claim

on the merits would void the lien pursuant to the plain meaning of 11 U.S.C. § 506(d)); *In re*

---

[1]"Such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523 (a)(5) of this title".  11 U.S.C. § 502(b)(5).

[2] "Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—(**A**) such creditor's claim against the estate is disallowed; (**B**) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or (**C**) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title."  11 U.S.C. § 502(e)(1).

*Blendheim*, 803 F.3d 477 (9th Cir. 2015)(voiding a lien after disallowance of a secured proof of claim after the creditor "slept on its rights" and refused to defend its claim).

74.     The Bankruptcy Court found that Debtor rebutted the presumption of authenticity that attaches to signatures on commercial paper, and that the Debtor presented sufficient evidence that Wells Fargo had manufactured documents, such as the Kennerty Assignment of Mortgage, that Wells Fargo could have forged the indorsement in blank on the note and therefore Wells Fargo lacked standing to file the claim as owner or holder of the note.

75.     Although Wells Fargo now seeks to "amend" its claim (again) to provide that Claim No. 1 was filed by Wells Fargo allegedly as servicer for Freddie Mac and not in its capacity as alleged "holder" of the mortgage Note, this proposed amendment would not change the outcome of Plaintiff's claim objection: Wells Fargo has still failed to satisfy its burden to prove up the blank "ta-da!" indorsement that appeared on the version of the Note that was filed in connection with Claim No. 1-2 in order to demonstrate that Freddie Mac has a right to enforce the Note.  Thus, regardless of whether Wells Fargo was acting on its own behalf in defending Claim 1-2 or on behalf of Freddie Mac, Wells Fargo's failure to offer evidence explaining the "ta da" blank indorsement results in the same ultimate outcome: neither Wells Fargo nor Freddie Mac can enforce the Note because it is not payable to either Wells Fargo or Freddie Mac, nor is it payable to bearer.  Thus, the Court's order disallowing the claim should not be disturbed, and the plain language of § 506(d) mandates that the lien securing Claim 1-2 is void in this case.

76.     Since the Proofs of Claim by Defendant Wells Fargo were disallowed and expunged and did not fall under any of the above exceptions, the Defendants' alleged lien on Plaintiff's Texas property should be declared void under 11 U.S.C. § 506(d).

77.    The Court should also issue an injunction directing Defendants to file a release of lien with the deed records for Williamson County, Texas.

## SECOND CAUSE OF ACTION
### (Against Defendant Wells Fargo)
### Sanctions for Abuse of Process: Inherent Authority/11 U.S.C. § 105(a)

78.    By this reference, Plaintiff incorporates all of the allegations contained in this complaint.

79.    Federal courts have inherent and express authority to control the practice before them. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). Bankruptcy courts are further empowered by 11 U.S.C. § 105(a), which authorizes them to "issue any order ... necessary or appropriate to carry out the provisions" of Title 11.  11 U.S.C. § 105(a); *In re Dickerson,* 2009 WL 4666457 (Bankr.N.D.N.Y. Dec. 8, 2009).  Bankruptcy courts also have inherent authority to sanction parties for improper conduct.  *In re Downs,* 103 F.3d 472, 477 (6th Cir.1996); *In re Feinberg,* 442 B.R. 215, 225 (Bankr. S.D.N.Y. 2010).  In order to merit sanctions, the conduct must be done in bad faith.  *See In re Green,* 422 B.R. 469, 474–75 (Bankr.S.D.N.Y.2010).

80.    Wells Fargo knowingly filed two false proofs of claims, Claims 1-1 and 1-2 in Plaintiff's bankruptcy case, both of which intentionally misrepresented Wells Fargo's identity as "creditor" when Wells Fargo knew that it was really filing those claims in its capacity as servicer for Freddie Mac.

81.    Wells Fargo knowingly prepared and attached the bogus Kennerty assignments purporting to convey the Plaintiff's mortgage from then-defunct Washington Mutual to Wells Fargo, despite knowing that Mr. Kennerty had no authority to effectuate such a conveyance on behalf of a non-existent entity.

18

82.    Wells Fargo caused the Kennerty assignment to be prepared and filed for the express purpose of "improving the record" in order to deceive the Plaintiff and the Court into believing (incorrectly) that Wells Fargo was entitled to enforce Plaintiff's mortgage note and deed of trust.

83.    Wells Fargo intentionally did not voluntarily disclose to the Plaintiff or the Court that Mr. Kennerty was part of a Wells Fargo "document execution team" that generated phony assignments when their documentation was inadequate or that Wells Fargo had an "indorsement team" that caused indorsements to be added to mortgage notes when the existing indorsements did not allow Wells Fargo to enforce the notes.

84.    Wells Fargo intentionally did not disclose to Plaintiff or the Court the material fact that Kennerty was a Wells Fargo employee at the time that he executed the assignment.

85.    Wells Fargo intentionally did not disclose to Plaintiff or the Court that Kennerty lacked authority to assign the deed of trust on Washington Mutual's behalf, even when Washington Mutual still existed and had the legal capacity to assign the deed of trust.

86.    Once Plaintiff sought to depose Mr. Kennerty, Wells Fargo aggressively evaded Plaintiff's efforts to take his deposition, eventually terminating his employment in order to be able to claim that Wells Fargo could no longer produce him as a witness.

87.    When Plaintiff persisted in her efforts to depose Mr. Kennerty, Wells Fargo, retained and paid counsel to represent Mr. Kennerty, and directed Mr. Kennerty's counsel to seek a protective order in South Carolina in order to prevent Mr. Kennerty's deposition from going forward.

88.     In connection with the effort to obtain a protective order preventing Plaintiff from deposing Mr. Kennerty, upon information and belief Wells Fargo encouraged Mr. Kennerty's counsel to falsely assert that the deposition should not be permitted because Mr. Kennerty had been receiving death threats subsequent to his name appearing in a Rolling Stone article that identified Mr. Kennerty as a "robo-signer."

89.     At his deposition, Mr. Kennerty denied knowledge of having ever received any death threat in connection with his work at Wells Fargo.

90.     Wells Fargo also repeatedly produced alleged "corporate representatives" for Wells Fargo that provided incompetent, incomplete, and/or misleading testimony in this case, including in connection with Plaintiff's 30(b)(6) deposition of Wells Fargo's corporate representative Mary Ellen Brust, the Declaration of Jose Pinto, and the testimony of Kyle Campbell.

91.     Wells Fargo misrepresented the non-existence of a servicing agreement between Wells Fargo and Freddie Mac that would be applicable to Plaintiff's mortgage loan, including but not limited to falsely claiming that Freddie Mac's servicing guide was in fact the servicing agreement that allegedly established Wells Fargo's right to service Plaintiff's loan on Freddie Mac's behalf.

92.     Most recently, Wells Fargo has filed a frivolous and misleading motion to amend Claim 1-2 in order to assert that Freddie Mac is the creditor and that Wells Fargo filed the claim on Freddie Mac's behalf in its alleged capacity as servicer for Freddie Mac with respect to Plaintiff's mortgage loan.

93.    This proposed amendment to Claim 1-2 is futile and clearly is designed as a dilatory tactic employed by Wells Fargo to further confuse the record and generate a meritless "basis" for reconsideration of Wells Fargo's already-disallowed proof of claim.

94.    Wells Fargo has demonstrated a clear pattern of dissembling in this case, which is also reflected in their conduct in other cases in this court and elsewhere around the country, including:

   a.    *In re Strassfield*, Case No. 11-24269, Bankr. S.D.N.Y. – facts are nearly identical to the facts of the case at bar – fraudulent assignment, "ta da" indorsement, unjustified resistance to discovery, false representations to the court regarding the identity of the parties that signed and notarized the bogus assignment.

   b.    *In re Guevara,* Case No. 07-32604, Bankr. N.D. Tex. – incompetent corporate representatives without personal knowledge, multiple versions of the note including one indorsed specifically to Wells Fargo and a subsequent "ta da" indorsement in blank, failure to disclose Freddie Mac's involvement as the real party in interest and inability to prove up Wells Fargo's relationship to Freddie Mac as servicer, resulting in disallowance of proof of claim and order for Wells Fargo to disgorge amounts received on the disallowed claim from Chapter 13 Trustee.

   c.    *In re Jones,* Case No. 03-16518, Bankr. E.D. La. - Court awarded $3 million in punitive sanctions against Wells Fargo for its clandestine tactics for collecting illegitimate amounts and its improper and abusive litigation conduct.

95.    Based on Wells Fargo's conduct in this case and its extensive history of similar misbehavior in bankruptcy courts, Plaintiff respectfully requests that the Court use its inherent and

statutory powers to award sanctions against Wells Fargo for their violations of and complete

disregard for the provisions and purposes of the Bankruptcy Code, punitive damages, attorneys'

fees and costs, an injunction ordering Wells Fargo to disgorge all amounts Plaintiff paid to Wells

Fargo, directly or indirectly, over the life of the loan, and all other relief the Court deems necessary

and appropriate to effectuate and protect the provisions and integrity of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
### (Against Defendant Wells Fargo)
### Common Law Fraud

96.    By this reference, Plaintiff incorporates all of the allegations contained in this

complaint.

97.    Plaintiff incorporates by this reference her objection to claim filed on October 4,

2010 in her underlying bankruptcy case.  Plaintiff asserts that this cause of action is a supplement

to her October 4, 2010 objection to claim and, for statute of limitations purposes, relates back to

her October 4, 2010 claim objection.

98.    Material representations of fact by Wells Fargo relevant to Plaintiff's fraud claim

include claiming that it is entitled to collect payment on Plaintiff's mortgage note, that it was

entitled to foreclose on Plaintiff's property, that it was entitled to assert a claim in Plaintiff's

bankruptcy as a "holder" of Plaintiff's mortgage note, and now, that Freddie Mac is entitled to

enforce Plaintiff's mortgage note and that Wells Fargo is Freddie Mac's authorized agent for

purposes of servicing Plaintiff's mortgage loan, including the filing of Claim No. 1 in Plaintiff's

Chapter 13 Bankruptcy case.

99.    Alternatively, Wells Fargo also falsely represented that Plaintiff's mortgage note was *not* indorsed in blank when it filed Claim 1-1 that attached the version of her mortgage note that was specifically indorsed to ABN AMRO.

100.    Each of these material representations by Wells Fargo was false.

101.    Wells Fargo made these false material representations with knowledge that they were false and/or with a reckless disregard for the truth of the representations.

102.    Wells Fargo intended that Ms. Franklin would rely on its false material representations.

103.    Ms. Franklin in fact relied upon Wells Fargo's false material representation by making payments to Wells Fargo, entering into a loan modification agreement with Wells Fargo, believing that Wells Fargo had a right to receive payment on her mortgage loan and that Wells Fargo was entitled to foreclose on her Texas home in order to satisfy her mortgage debt, and, in order to prevent the foreclosure, Ms. Franklin filed the above-captioned Chapter 13 bankruptcy case.

104.    Ms. Franklin has been injured by Wells Fargo's false material representations of fact: She has suffered economic damages, including out of pocket expenses, all amounts paid by Plaintiff, directly or indirectly, to Wells Fargo during the life of the loan, bankruptcy fees, attorneys' fees, court costs, damage to her credit, lost income, and lost opportunities for income as a result of Wells Fargo's fraud.  Ms. Franklin has also been injured personally, having experienced extreme mental anguish, severe emotional distress, unwarranted humiliation, and justifiable outrage over Wells Fargo's fraudulent conduct.

105.    Wells Fargo's fraud, as outlined herein, is outrageous, malicious and otherwise morally culpable conduct such that an award of exemplary damages by this court against Wells Fargo is appropriate to punish and deter this type of conduct.

## FOURTH CAUSE OF ACTION
### (Against Defendant Wells Fargo)
### Negligence / Gross Negligence

106.    By this reference, Plaintiff incorporates all of the allegations contained in this complaint.

107.    Plaintiff incorporates by this reference her objection to claim filed on October 4, 2010 in her underlying bankruptcy case.  Plaintiff asserts that this cause of action is a supplement to her October 4, 2010 objection to claim and, for statute of limitations purposes, relates back to her October 4, 2010 claim objection.

108.    Wells Fargo, as described *supra*, breached their duty to exercise reasonable care in avoiding foreseeable injury to the Plaintiff by repeatedly asserting that Wells Fargo had the right to collect on Plaintiff's mortgage note, despite having no legitimate evidence supporting their claim.

109.    Plaintiff was damaged as a result of Wells Fargo's breach of this duty.

110.    Wells Fargo's actions as described herein objectively involved an extreme degree of risk and a high probability of substantial financial and emotional harm to the Plaintiff.

111.    Wells Fargo was aware of the risks involved with regard to these actions and omissions and proceeded with conscious indifference to Plaintiff's rights and welfare.

112.    Plaintiff seeks to recover her general damages, including all amounts paid by Plaintiff, directly or indirectly, to Wells Fargo during the life of the loan, as well as exemplary

damages related to Wells Fargo's gross negligence.   Plaintiff is entitled to actual damages, exemplary damages, her reasonable attorneys' fees and costs, and an injunction requiring Wells Fargo to disgorge all amounts paid by Plaintiff to Wells Fargo during the life of the loan.

### ~~FIFTH CAUSE OF ACTION~~
### ~~(Against Defendant Wells Fargo)~~
### ~~Violation of the Fair Debt Collection Practices Act~~

~~113.    By this reference, Plaintiff incorporates all of the allegations contained in this complaint.~~

~~114.    Plaintiff is aware that the Second Circuit has previously held in *Simmons v. Roundup Funding, LLC* that the filing of a proof of claim in bankruptcy court cannot form the basis for an FDCPA claim.   *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010).[3]~~

~~115.    However, Plaintiff respectfully submits that the facts in this case, i.e. Wells Fargo's seeking to amend a disallowed proof of claim in Plaintiff's case when both Wells Fargo and Freddie Mac have no actual authority to collect on Plaintiff's mortgage, are distinguishable from the facts in *Simmons v. Roundup Funding, LLC*.~~

~~116.    Further, the Second Circuit's ruling in *Simmons* has been called into question by its recent holding in *Garfield v. Ocwen Loan Servicing, LLC* that violations of the Bankruptcy Code's discharge provisions can also be the basis for FDCPA claims.   *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91 (2d Cir. 2016).  Finally, the Supreme Court has recently granted certiorari in *Johnson v. Midland Funding, LLC*, cert granted, No. 16-315 (U.S. Oct. 11, 2016), which specifically addresses the issue of whether the filing of a proof of claim in bankruptcy can give rise to an FDCPA claim, and a decision on this issue is expected by the end of the 2017 term.~~

---

[3] Plaintiff respectfully asserts that the ruling in *Simmons* is questionable as the Circuit Court was presented with poor briefing from plaintiff's counsel in that matter, which the *Simmons* opinion appears to recognize.

117.    ~~Plaintiff therefore believes that she has a good faith basis to assert that Wells Fargo's actions in this case in attempting to amend an already disallowed proof of claim violates the FDCPA.~~

118.    ~~Plaintiff is a "consumer" as that term is defined by the Fair Debt Collection Practices Act (the "FDCPA").~~

119.    ~~Defendant Wells Fargo is a "debt collector" as that term is defined in the FDCPA.~~

120.    ~~Wells Fargo has violated 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f generally by filing a motion to amend Claim 1-2 in order to assert that Freddie Mac is the creditor and that Wells Fargo filed the claim on Freddie Mac's behalf in its alleged capacity as servicer for Freddie Mac with respect to Plaintiff's mortgage loan, despite the fact that Claim 1-2 has already been disallowed and there is absolutely no evidence that Wells Fargo or Freddie Mac are actually entitled to collect on Plaintiff's mortgage note.~~

121.    ~~Wells Fargo has violated 15 U.S.C. § 1692e(2)(a) by misrepresenting the character, amount, or legal status of Plaintiff's mortgage note as described herein.~~

122.    ~~Wells Fargo has violated 15 U.S.C. § 1692e(10) by using false and deceptive means in an attempt to collect a debt from Plaintiff.  Specifically, Wells Fargo's claims in its motion to amend the disallowed Claim 1-2 that Wells Fargo filed the claim in its alleged capacity as servicer for Freddie Mac when there is no evidence that Freddie Mac is entitled to collect on Plaintiffs' mortgage loan is false and deceptive.~~

123.    ~~Wells Fargo has also violated 15 U.S.C. § 1692f generally by using unfair and unconscionable means in an attempt to collect a debt from Plaintiff.  Specifically, Wells Fargo is~~

~~now attempting to amend Claim 1-2 after more than five years of protracted litigation that resulted~~

~~in the disallowance of Claim 1-2.~~

~~124.   Plaintiff has been damaged as a direct and proximate result of Wells Fargo's~~

~~violations of the FDCPA.~~

~~125.   Plaintiff is entitled to her actual damages, all amounts paid by Plaintiff, directly or~~

~~indirectly, to Wells Fargo during the life of the loan, statutory damages, and attorneys' fees and~~

~~costs as provided in 15 U.S.C. § 1692k.~~

### SIXTH CAUSE OF ACTION
### (Against Defendant Wells Fargo)
### Violation of the Fair Credit Reporting Act ("FCRA")

126.   By this reference, Plaintiff incorporates all of the allegations contained in this complaint.

127.   Plaintiff is a "consumer" as that term is defined by the FCRA.

128.   Wells Fargo is a "person" and a "user" of consumer credit and other financial information as those terms are defined by the FCRA.

129.   As alleged above, Wells Fargo willfully accessed portions or all of Plaintiff's consumer credit reports for an impermissible use under false pretenses, and has failed to comply with 15 U.S.C. § 1681b(f).

130.   Plaintiff has suffered actual damages, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the Fair Credit Reporting Act.

131.   Pursuant to 15 U.S.C. § 1681n, Wells Fargo is liable to Plaintiff for her actual or statutory damages, attorneys' fees and costs, and punitive damages.

132.     In the alternative only, Wells Fargo negligently accessed portions or all of Plaintiff's consumer credit reports for an impermissible purpose and has failed to comply with 15 U.S.C. § 1681b(f).

133.     Ms. Franklin incurred expenses in connection with obtaining copies of her credit reports as a result of Wells Fargo's unauthorized credit pulls.  Ms. Franklin was aware of Wells Fargo's unauthorized credit pulls because she pulled her credit report at her own expense.  When Ms. Franklin learned that Wells Fargo was continuing to access her credit file despite the disallowance of Wells Fargo's proof of claim, Ms. Franklin continued to pull her credit report on several occasions, using a paid online service, in order to see whether Wells Fargo was continuing to illegally access her credit report.  Each time Ms. Franklin pulled her credit report after learning about Wells Fargo's unauthorized credit pulls, she was charged for these credit reports by the online credit reporting service.

134.     Wells Fargo's unauthorized credit pulls have caused Ms. Franklin severe and tangible emotional distress, which she characterizes as feeling "like being stalked," which is a terrifying and oppressive feeling "like someone is on top of you" that is specifically meaningful to Ms. Franklin, as she has been literally stalked in the past.

135.     Moreover, Ms. Franklin suffers from anxiety. Wells Fargo's unauthorized credit pulls materially increased Ms. Franklin's anxiety levels because she was constantly concerned that Wells Fargo would continue to pursue her and her property, regardless of the outcome of this litigation. As a result, Ms. Franklin has frequently been unable to fall asleep at night as she normally would, and in order to sleep, she increased her use of medication that has been prescribed for her to take as needed to help her manage her anxiety. Accordingly, Ms. Franklin incurred out-of-pocket

expense for prescription medication that she would not have taken, but for Wells Fargo's illegal credit pulls.

136.    Moreover, as a result of the combination of stress, outrage, anxiety, fear of damage to her reputation, and general sense of oppression and violation of her privacy and of her personal freedom caused specifically by Wells Fargo's unauthorized credit pulls, Ms. Franklin has experienced emotional distress and mental anguish, which have resulted in physical manifestations experienced by Ms. Franklin, including migraine headaches, vertigo, heart palpitations, materially higher-than-normal blood pressure, reduced ability to focus and be as productive as usual at work, as well as other physical manifestations of the impacts that the stress caused by Wells Fargo's unauthorized credit pulls have caused her.

137.    In addition to being unable to be as focused and productive as usual when working, the stress and aggravation Ms. Franklin has experienced as a result of Wells Fargo's unauthorized credit pulls has made it so that she has been fatigued and thus unable to work as much as she otherwise would have worked, resulting in lost income.

138.    Wells Fargo's actions have also caused Plaintiff significant fear and anxiety that Wells Fargo's unauthorized credit pulls have damaged Plaintiff's reputation.  Plaintiff works with small children in their homes, and it is common for potential clients to look into Plaintiff's background.  Wells Fargo's unauthorized credit pulls have created additional unnecessary fear and anxiety that potential clients will view Plaintiff unfavorably due to Wells Fargo's unauthorized credit pulls.

139.    Ms. Franklin has also been damaged in that she has incurred and continues to incur attorneys' fees that are necessary to cause Wells Fargo to cease its practice of unlawfully accessing her credit report.

140.    Pursuant to 15 U.S.C. § 1681o, Wells Fargo is liable to Plaintiff for her actual damages and attorneys' fees and costs.

## PRAYER

**WHEREFORE,** Plaintiff prays that the Court grant the relief requested herein and issue a Declaratory Judgment and Order holding that since the Proofs of Claim by Defendant Wells Fargo were disallowed, the alleged lien of Defendants' on Plaintiff's Premises should be declared void under 11 U.S.C. § 506(d) and that the Court enter an injunction directing Defendants to file a release of lien in the deed records for Williamson County, Texas;

**WHEREFORE,** any amended claim brought by Wells Fargo as servicing agent to Freddie Mac or by Freddie Mac individually remains subject to the fully litigated objection to claim and as the claim is disallowed and expunged the alleged lien of Defendants' on Plaintiff's Premises should be declared void under 11 U.S.C. § 506(d);

**WHEREFORE,** Plaintiff prays that, upon final trial of this cause, she be granted all relief to which she is entitled, including all actual and statutory damages, including attorneys' fees and costs (at trial and on appeal) to which Plaintiff is entitled; all compensatory damages to which Plaintiff is entitled, including attorneys' fees and costs, exemplary damages, and/or punitive damages and sanctions for Defendant Wells Fargo's actions as described herein; an injunction requiring Wells Fargo to disgorge all amounts paid by Plaintiff, directly or indirectly, to Wells

Fargo over the life of the loan, and for all such other and further relief as to the Court may seem just and proper.

Dated: July 5, 2017

       White Plains, New York

Respectfully submitted,

KELLETT & BARTHOLOW PLLC

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")
State Bar No. 4306320
11300 N. Central Expressway
Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

Linda M. Tirelli, Esq.
Tirelli & Wallshein, LLP
50 Main Street, Suite 405
White Plains NY 10606
Phone: (914) 732-3222
Fax: (914) 517-2696
LTirelli@TW-LawGroup.com

*ATTORNEYS FOR PLAINTIFF*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following was served on the parties listed below via electronic and first-class mail, postage prepaid, on September 25, 2017.

*/s/ Theodore O. Bartholow, III ("Thad"*

Theodore O. Bartholow, III ("Thad")

Nicole Schiavo
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
Nicole.schiavo@hoganlovells.com

*Attorneys for Defendants*